

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–14–947

| | | |
|---|---|---|
| WILLIAM BRIGGS **APPELLANT** | | **Opinion Delivered** JUNE 3, 2015 |
| V. | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION [NO. 60CR–13–1580] |
| STATE OF ARKANSAS **APPELLEE** | | HONORABLE LEON JOHNSON, JUDGE |
| | | AFFIRMED |

## DAVID M. GLOVER, Judge

William Briggs was tried by the court and found guilty of the offense of DWI-first offense. He appeals, contending the trial court erred 1) in admitting the Intoximeter results because he did not receive his requested second test and 2) in finding sufficient evidence to support the conviction. We affirm.

At 1:55 a.m. on August 16, 2012, Trooper Alan Johnson of the Arkansas State Police was sent to investigate a single-vehicle incident involving a car reportedly on fire off I-530. Upon arriving at the scene, Trooper Johnson found Briggs, who told him the vehicle was his and that he had been driving it. Trooper Johnson testified the vehicle was engulfed in flames; Briggs was "a little unsteady" and had the odor of intoxicants; and Briggs reported the accident occurred because he swerved to miss an animal on the road. Trooper Johnson explained his investigation of the scene did not support Briggs's explanation; it was more supportive of the

SLIP OPINION

car missing the exit and Briggs losing control in trying to correct; and there was no evidence of braking or other indications of avoidance maneuvers to miss an animal. He stated he did not conduct an investigation to determine the cause of the fire, but it was very dry in the area. According to Trooper Johnson, the circumstances of the vehicle collision, his observations of Briggs's unsteadiness, and the odor of intoxicants caused him to believe further DWI tests were indicated. Briggs was very cooperative, and Trooper Johnson took Briggs to the Sherwood Police Department to conduct a DWI investigation involving an Intoximeter instrument, which Trooper Johnson was certified to perform.

He stated it did not take him long to get to the scene of the accident because he was in the area looking for a subject about whom they had received a report of intoxication from a taxi–cab driver; the driver had reported he had dropped a passenger off and felt the subject was too intoxicated to drive; and when he received the report on the vehicle incident, he considered Briggs might be the person reported by the taxi driver. Trooper Johnson stated that because of Briggs's age (77), "some particular ailments which prevent[ed] a full battery of [field sobriety tests]," and the fact that Briggs had been involved in the vehicle accident, he did not think the field-sobriety types of tests would be effective, and the tests could not be conducted safely at that location.

He further explained how he informs subjects of the rules and their rights before administering a breathalyzer test, i.e., reading the form, getting verbal responses, and having the subject initial paragraphs indicating his or her understanding and consent to the test. He testified that Briggs seemed to understand everything being explained to him and agreed to

take the test. He identified State's Exhibit 1, which was a copy of the rights form Briggs signed.

He testified the form showed Briggs was informed of his right to a second test, and Briggs indicated the desire for one. Trooper Johnson also acknowledged that he knew he was obligated to provide Briggs with reasonable assistance in getting the second test. He candidly admitted he did not specifically recall his conversation with Briggs but explained he has conducted over 800 breathalyzer tests. He testified it is his practice always to tell subjects who are being released from the facility late at night, which was true of Briggs, that such tests will have to be conducted at a hospital emergency room, and the additional testing will be at the subject's expense. He stated that he did not take Briggs to get another test when Briggs was released; he took Briggs to his house located "somewhere off Roosevelt."

Defense counsel objected to the introduction of the breathalyzer-test results, arguing that Arkansas Code Annotated section 5-65-204(e) "precludes admittance of the BAC if—if the Defendant requests a second test. He did request a second test. The second test wasn't given to him; therefore, we ask that we—we ask that the BAC results not be admitted in this case." The State responded that Trooper Johnson had explained if a subject wants a second test, and they have the funds to take the second test, they get the second test; the fact that Trooper Johnson took Briggs home indicated Briggs did not have the funds; and there is no requirement that the officer provide anything more than reasonable assistance in taking the second test. The State emphasized that reasonable assistance does not require an officer to pay for the subject's additional tests—that a second test would have been at Briggs's own expense.

Defense counsel countered by arguing that Trooper Johnson could have assisted Briggs by taking him to an ATM or to his family and helped him get the money. The trial court explained substantial compliance is what is required under the statute and overruled the objection.

The results of the breathalyzer test showed a final result of .09. Trooper Johnson explained he arrived on the scene at 1:55 a.m.; arrived at the Sherwood station at approximately 2:50 a.m.; the first test was administered at 2:53 a.m.; the original sample was .099; and the second one, taken two minutes later, was .102. He stated a rise of that nature would be impossible; Briggs would have had to drink in the back of the police car or at the police station within that hour; the first time he ever heard of Briggs taking a bottle out of his vehicle to drink while his car was burning was at the district-court level; and Briggs never told him that on the night in question. Trooper Johnson also explained further that typical reactions in trying to avoid something on the road are to brake, leaving skid marks, or to swerve, causing a "yawl," which happens when the vehicle is still traveling in a forward momentum but sideways. He testified neither of those marks was found at the scene. The State rested its case, and Briggs moved for a directed verdict, which was denied.

First, we address Briggs's second argument, which challenges the sufficiency of the evidence supporting his conviction for DWI-first offense. We examine challenges to the sufficiency of the evidence, before examining trial error, because of the prohibitions against double jeopardy. *Watkins v. State*, 2010 Ark. App. 85, 377 S.W.3d 286. In addressing challenges to the sufficiency of the evidence, we review the evidence in the light most

favorable to the State as the prevailing party, and affirm if the conviction is supported by substantial evidence. *Id*. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resort to speculation or conjecture. *Id*.

In challenging the sufficiency of the evidence, Briggs essentially contends that because the breathalyzer results should have been excluded (his remaining argument), the evidence does not support his conviction. However, in reviewing a challenge to the sufficiency of evidence, we examine all of the evidence submitted before addressing alleged trial error. *Id*. Here, the evidence established Briggs was driving the vehicle; he exhibited unsteadiness and the odor of intoxicants; he was administered a breathalyzer test; and the breathalyzer results showed intoxication. Those circumstances constitute substantial evidence of DWI.

For his remaining point, Briggs contends that the trial court erred in admitting the Intoximeter results because he did not receive his requested second test. We disagree.

At the time of the offense, Arkansas Code Annotated section 5-65-204(e) (Repl. 2005) provided:

(e)(1) The person tested may have a physician or a qualified technician, registered nurse, or other qualified person of his or her own choice administer a complete chemical test in addition to any chemical test administered at the direction of a law enforcement officer.

(2) The law enforcement officer shall advise the person in writing of the right provided in subdivision (e)(1) of this section and that if the person chooses to have an additional chemical test and the person is found not guilty, the arresting law enforcement agency shall reimburse the person for the cost of the additional chemical test.

(3) The refusal or failure of a law enforcement officer to advise a person of the

5

right provided in subdivision (e)(1) of this section and to permit and assist the person to obtain a chemical test under subdivision (e)(1) of this section precludes the admission of evidence relating to a chemical test taken at the direction of a law enforcement officer.

Our court explained the applicable burden of proof and standard of review with respect to this statute in *Ebel v. State*, 2014 Ark. App. 588, at 2, 445 S.W.3d 553, 554:

> When a defendant moves to exclude a test pursuant to section 5-65-204(e)(2), the State bears the burden of proving by a preponderance of the evidence that the defendant was advised of his right to have an additional test performed and that he was assisted in obtaining a test. The initial test result may be admitted into evidence if there was substantial compliance with the statute. Furthermore, the officer must provide only such assistance in obtaining an additional test as is reasonable under the circumstances presented. Whether the assistance provided was reasonable under the circumstances is ordinarily a fact question for the trial court to decide. It is for the trial court to weigh the evidence and resolve the credibility of the witnesses. We will not reverse the trial court's ruling on the admission of evidence absent an abuse of discretion and a showing of prejudice.

(Internal citations omitted.)

In *Ebel*, our court affirmed the trial court's ruling that the officer's actions constituted reasonable assistance and substantial compliance with the statute. After a breathalyzer test was administered on Ebel at the sheriff's office, he requested a second test and stated he had the means to pay for it. The officer transported Ebel to the hospital, where his debit card was declined twice. The officer denied Ebel's request to call his parents, who lived in another town, and have them bring money to the hospital. We explained that the officer had no duty to allow Ebel to call his parents to bring money, and we found no clear error in the trial court's finding that the officer's actions constituted reasonable assistance under the circumstances and in its determination that the officer substantially complied with the statute.

Briggs contends that Trooper Johnson "was not able to testify to any assistance that was

given," "[n]o phone calls, no telephone books, no information regarding local hospitals or payments, and most importantly according to this Court, no transportation"; and that Trooper Johnson testified as to his regular practices and procedures, but could not testify with any specificity regarding his interaction with Briggs other than recalling he drove Briggs home. Consequently, Briggs concludes that the trial court erred in allowing the breathalyzer test results into evidence. We disagree.

We find no clear error in the trial court's finding that Trooper Johnson substantially complied with the statutory requirements for providing reasonable assistance under the circumstances in obtaining a second test. We applaud Trooper Johnson's candor in acknowledging he could not remember the specifics of his conversation with Briggs, but explaining his standard practice in dealing with over 800 such situations is to advise the subject of his right to obtain a second test verbally and in writing, which was established with the introduction of the rights form signed by Briggs; to explain that the cost of a second test is the subject's responsibility; and upon release from custody late at night, which was true in Briggs's situation, to advise subjects that due to the late hour a second test would need to be administered at the local emergency room. We do not agree under the circumstances presented here that "reasonable assistance" required Trooper Johnson to chauffeur Briggs to an ATM or to his family to get money to pay for the second test.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

SLIP OPINION



*Llewellyn J. Marczuk*, Deputy Public Defender, by: *Mary Kathryn Williams*, Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Evelyn D. Gomez*, Ass't Att'y Gen., for appellee.